# In the United States Court of Federal Claims

No. 18-628C
Filed: April 4, 2019

| | |
|---|---|
| MCLEOD GROUP, LLC, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>THE UNITED STATES, )<br>)<br>   Defendant. )<br>) | Contract Disputes Act; Blanket Purchase Agreement; Subject-Matter Jurisdiction; RCFC 12(b)(1); Breach of Contract. |

*Richard P. Rector*, Counsel of Record, *Dawn E. Stern*, Of Counsel, DLA Piper US LLP, Washington, DC; *Joshua B. Duvall*, Matross Edwards, LLC, Washington, DC, for plaintiff.

*Sonia W. Murphy*, Trial Attorney, *Patricia M. McCarthy*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Charlene T. Storino*, Of Counsel, *Christine R. Couvillon*, Of Counsel, Acquisition and Procurement, United States Department of Homeland Security, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I. INTRODUCTION

In this Contract Disputes Act ("CDA") action, plaintiff, McLeod Group, LLC ("McLeod"), alleges that the United States Department of Homeland Security ("DHS") breached its contractual obligations under a blanket purchase agreement (the "BPA") and certain task orders issued pursuant to the BPA. *See generally* Compl. As relief, McLeod seeks to recover monetary damages and attorney's fees and costs from the government. *Id.* at Prayer for Relief. The government has moved to dismiss Counts I, II and V of the complaint for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot. For the reasons set forth below, the Court **GRANTS** the government's partial motion to dismiss and **DISMISSES** Counts I, II and V of the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

Plaintiff, McLeod, is a Maryland limited liability company and a service-disabled veteran-owned small business headquartered in Columbia, MD. Compl. at ¶ 1. In this Contract Disputes Act action, McLeod alleges that DHS breached its contractual obligations under the BPA and subsequent task orders issued pursuant to that agreement. *See generally* Compl.

Specifically, McLeod alleges in Counts I, II and V of the complaint that DHS breached the BPA by acting in bad faith and abusing its discretion in connection with the performance and administration of the BPA. *Id.* at ¶¶ 80-99, 113-118. McLeod also alleges that the agency breached its contractual obligations to collaborate and cooperate with McLeod on certain task orders issued pursuant to the BPA. *Id.* at ¶¶ 100-112. In addition, McLeod alleges that DHS unreasonably failed to pay the preparation expenses associated with the CDA claim that McLeod filed with the DHS contracting officer. *Id.* at ¶¶ 119-123. And so, McLeod seeks to recover monetary damages in the amount of $5,203,055.42, and attorney's fees and costs from the government. *Id.* at Prayer for Relief.

#### 1.     The OCAO Investigation

As background, in 2011, DHS commenced an internal human resources investigation into the agency's chief administrative officer and the management of the Office of the Chief Administrative Officer ("OCAO"), after receiving complaints of a hostile work environment at the OCAO. *Id.* at ¶¶ 21-22. On July 26, 2011, representatives of DHS requested that the principal of McLeod, Mark Burns, cooperate with this investigation and that Mr. Burns provide information about the management environment within the OCAO. *Id.* at ¶ 23; *see also id.* at ¶ 2. In response, Mr. Burns informed DHS that the chief administrative officer at issue "created a highly oppressive and toxic environment for OCAO staff." *Id.* at ¶ 24.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); the government's partial motion to dismiss ("Def. Mot."); the Appendix attached thereto ("Def. App'x"); and plaintiff's response and opposition to the government's partial motion to dismiss ("Pl. Resp."). Except where otherwise noted, all facts recited herein are undisputed.

### 2.     The Blanket Purchase Agreement

As a result of its internal human resources investigation, DHS decided to hire a management-consulting firm "to provide DHS with agency-wide management consulting services and to evaluate and provide recommendations on improvements to organizational structure, mission, and organization of the agency's core lines of business." *Id.* at ¶ 18; *see also id.* at ¶¶ 7-15. To that end, the agency conducted a competitive acquisition for the award of a blanket purchase agreement that "would be used to support both OCAO and the entirety of DHS" in January 2011. *Id.* at ¶¶ 16-17.

On September 29, 2011, DHS awarded the BPA to McLeod. *Id.* at ¶ 18. Thereafter, DHS issued seven task orders to McLeod under the BPA, during the period September 30, 2011, through September 11, 2014. Def. Mot. at 3-5; Def. App'x at 249-51.

The BPA calls for a performance period from September 30, 2011, through September 29, 2016, and a ceiling amount of $8,000,000.00. Def. App'x at 3. The BPA also provides that the awardee under this agreement must "attend a post-award kickoff meeting" and complete monthly status reports on open task orders. *Id.* at 13-14.

In addition, the BPA provides that the awardee may be required to develop and maintain a project management plan and participate in in-progress reviews. *Id.* at 14. Lastly, and specifically relevant to this dispute, the BPA states that the agreement "does not obligate any funds" and that the agreement "is not a contract." *Id.* at 5, 7.

In April 2012, the executive of another government contractor—Java Productions, Inc. ("JPI")—asked Mr. Burns whether JPI could work as a subcontractor under the BPA. Compl. at ¶ 33. McLeod alleges that, after Mr. Burns declined this request, DHS retaliated against McLeod and declined to award McLeod any additional task orders pursuant to the BPA.[2]  *Id.* at ¶¶ 33-40.

---

[2] On August 28, 2012, DHS awarded JPI an indefinite delivery indefinite quantity contract for services to support the DHS Office of Operations Coordination with professional management support for the Homeland Security Information Network. Def. App'x at 251-54. The agency issued multiple task orders under that contract. *Id.*

### 3. McLeod's CDA Claim

On October 4, 2016, McLeod submitted a certified claim to the DHS contracting officer alleging, among other things, that DHS failed to execute its contractual responsibilities under the BPA in a good faith and trusted manner, and that the agency acted in bad faith by not issuing additional within-scope task orders to McLeod. Def. App'x at 134, 149; *see also* 247-48. In the final decision, the DHS contracting officer found that:

> McLeod has failed to articulate a proper basis for its claim and the evidence provided does not show that the Government acted in bad faith and failed to execute contractual responsibilities in good faith. [The agency] did not at any time have specific intent to injure McLeod. A BPA is an agreement and [the agency] could have at any time stopped using the BPA or closed it due to lack of support by the Program Office with whom the BPA was awarded.

*Id.* at 270. And so, the DHS contracting officer denied McLeod's CDA claim in its entirety on May 3, 2017. *Id.* at 247.

Thereafter, McLeod filed this action.

### B. Procedural History

On May 2, 2018, McLeod filed the complaint. *See generally* Compl. On August 31, 2018, the government filed a motion to dismiss Counts I, II, and V of the complaint. *See generally* Def. Mot. On October 29, 2018, McLeod filed a response and opposition to the government's partial motion to dismiss. *See generally* Pl. Resp. On November 21, 2018, the government filed a reply in support of its partial motion to dismiss. *See generally* Def. Reply.

This matter having been fully briefed, the Court resolves the pending partial motion to dismiss.

## III. LEGAL STANDARDS

### A. RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction, pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). But, plaintiff bears the burden of establishing subject-matter jurisdiction, and it must do so by a preponderance

of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act is, however, "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (alterations original). And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

### B.  The Contract Disputes Act

The Contract Disputes Act ("CDA") waives sovereign immunity and expressly authorizes this Court to review the final decisions of a contracting officer. 41 U.S.C. § 7104; *Zhengxing v. United States*, 71 Fed. Cl. 732, 737 (2006), *aff'd*, 204 Fed. App'x 885, (2006); *see also* 28 U.S.C. § 1491(a)(2) (providing that this Court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the Contract Disputes Act], . . . on which a decision of the contracting officer has been issued under

section 6 of that Act."). This Court has held that its jurisdiction under the CDA requires the existence of an express or implied contract with the government. *Zhengxing*, 71 Fed. Cl. at 737. And so, the CDA applies only to express or implied contracts entered into by a federal executive agency.[3] *Id*.; 41 U.S.C. § 7104.

The requirements for establishing the existence of an express or implied contract are identical. *See Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006); *Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 767 (2014) ("The elements are the same for an express or implied-in-fact contract. . . ."). A plaintiff must show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). In this regard, this Court has held that blanket purchase agreements are not contracts. *Crewzers Fire Crew Transport, Inc. v. United States*, 98 Fed. Cl 71, 77 (2011), *aff'd*, 741 F.3d 1380 (Fed. Cir. 2014). Rather, these agreements are "a simplified method of filling repetitive needs for supplies or services by establishing 'charge accounts' with qualified sources of supply." *Zhengxing*, 71 Fed. Cl. at 738 (quoting 48 C.F.R. § 13.303-1(a)); *see also Crewzers*, 741 F.3d at 1382-83.

The Federal Circuit has also recognized that a blanket purchase agreement lacks the mutuality of consideration required to be a contract, because a blanket purchase agreement is "merely a framework for future contracts and only creates a contractual obligation with regard to accepted orders." *Zhengxing v. United States*, 204 Fed. App'x 885, 886-87 (Fed. Cir. 2006). And so, the CDA does not confer jurisdiction upon the Court to consider claims based upon a blanket purchase agreement. *Zhengxing*, 71 Fed. Cl. at 738-39.

---

[3] A plaintiff must also demonstrate compliance with the requirements of the CDA to establish jurisdiction in a Contract Disputes Act matter. The CDA requires that all claims made by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a final decision. 41 U.S.C. § 7103(a); *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1111-12 (Fed. Cir. 2013). If the claim made by the contractor is for more than $100,000.00, the contractor must also certify the claim. 41 U.S.C. § 7103(b)(1).

## IV.     LEGAL ANALYSIS

The government has moved to dismiss Counts I, II and V of the complaint for lack of subject matter jurisdiction, because these claims rely solely upon the blanket purchase agreement that McLeod entered into with DHS to establish a contractual relationship between the parties. *See generally* Def. Mot. Specifically, the government argues that the Court does not possess subject-matter jurisdiction to consider these claims for three reasons. First, the government argues that there is no factual or legal predicate to establish jurisdiction under the CDA in this case, because the subject BPA is not a contract. *Id*. at 8-10. The government also argues that McLeod fails to assert non-frivolous allegations regarding the existence of a contract with the government, because the allegations in the complaint related to the BPA "are directly foreclosed by binding legal precedent holding that BPAs are not contracts." Def. Reply at 5.

In addition, the government argues that McLeod fails to identify the specific terms of the BPA that have allegedly been breached, and, thus, McLeod cannot meet the pleading requirements under RCFC 9(k). *Id.* at 5-6; *see also* RCFC 9(k). And so, for these reasons, the government requests that the Court dismiss Counts I, II, and V of the complaint pursuant to RCFC 12(b)(1). Def. Mot. at 10.

In its response and opposition to the government's partial motion to dismiss, McLeod counters that the dismissal of its claims related to the BPA upon jurisdictional grounds would be improper, because the question of whether the BPA is a contract is a question of law. Pl. Resp. at 7-11. McLeod also argues that it has asserted non-frivolous allegations regarding the existence of a contract with the government, because the allegations in the complaint "reflect a fully formed and partially performed agreement" with the government. *Id.* at 12-13 (emphasis removed). And so, McLeod requests that the Court deny the government's partial motion to dismiss. Pl. Resp. at 17.

For the reasons set forth below, a careful reading of the complaint and the BPA makes clear that the Court does not possess subject-matter jurisdiction to consider the claims set forth in Counts I, II and V of the complaint. And so, the Court **GRANTS** the government's partial motion to dismiss and **DISMISSES** Counts I, II and V of the complaint. RCFC 12(b)(1).

### A. The Court Does Not Possess Jurisdiction To Consider CDA Claims Based Upon McLeod's BPA

The government persuasively argues in its partial motion to dismiss that this Court does not possess subject-matter jurisdiction to consider McLeod's claims that DHS breached its contractual obligations under a blanket purchase agreement. *See generally* Def. Mot. This Court has held that, to establish jurisdiction under the CDA, a plaintiff must establish the existence of an express or implied contract with the government. *Zhengxing*, 71 Fed. Cl. at 737. The Federal Circuit has also held that blanket purchase agreements are not contracts with the government. *Crewzers Fire Crew Transport, Inc. v. United States*, 741 F.3d 1380, 1382-83 (Fed. Cir. 2014); *see also Zhengxing*, 204 Fed. App'x at 886-87. Rather, these agreements are "frameworks for future contracts—'a set of grounds rules as it were, and no obligations are assumed by either party until orders are given by the Government and accepted by the contractor.'" *Crewzers*, 741 F.3d at 1381 (quoting *Modern Sys. Tech. Corp. v. United States*, 979 F.2d 200, 204 (Fed. Cir. 1992)). And so, the CDA does not confer jurisdiction upon the Court to consider claims based upon the alleged breach of a blanket purchase agreement. *Zhengxing*, 71 Fed. Cl. at 738-39.[4]

A careful review of the complaint and the BPA at issue in this dispute makes clear that the BPA is not a contract that can be relied upon to establish jurisdiction in this case. First, the plain text of the BPA provides that this agreement is "not a contract" with the government. Def. App'x at 7. While, perhaps not fully dispositive, this language shows that the parties to the BPA did not intend for this agreement to be a contract. *See Tri-Star Electronics Int'l, Inc. v. Preci-Dip Durtal SA*, 619 F.3d 1364, 1367 (Fed. Cir. 2010) ("[T]he intention of the parties to a contract controls its interpretation." (citations omitted)).

Second, the BPA provides that this agreement "does not obligate any funds" and that "Task Orders will be placed against this BPA by DHS" for particular services. Def. App'x at 5, 7. In this regard, the terms of the BPA are quite analogous to the BPA at issue in *Zhengxing v. United States*, 204 Fed. App'x 885 (Fed. Cir. 2006), where the Federal Circuit recognized that the language in a blanket purchase agreement providing that the "agency shall be obligated only to the extent of authorized call orders actually placed under that agreement" showed that the

---

[4] The government has included a copy of the BPA that McLeod entered into with DHS in the appendix to its partial motion to dismiss. Def. App'x at 2-27; *see also* Pl. Resp. (indicating that plaintiff does not dispute the terms of the BPA).

8

blanket purchase agreement at issue in that case lacked the mutuality of consideration needed to be a contract. *Zhengxing*, 204 Fed. Appx at 886-87 (explaining that a blanket purchase agreement is "merely a framework for future contracts and only creates a contractual obligation with regard to accepted orders.")

The absence of mutuality of consideration in the BPA at issue here is further evidenced by the fact that this agreement does not impose any significant obligations upon McLeod or DHS. The BPA provides that all performance obligations will be specified in the task orders to be issued pursuant to the BPA. *See* Def. App'x at 7-8; *see also id.* at 5 ("Delivery destination and schedule will be specified in each individual Task Order"); *id.* at 9 ("Based upon issuance of written Task Order(s) . . . Contractor shall be required to provide service on-site . . . ."). Notably, the BPA also does not obligate DHS to issue any task orders. *See generally id.* 2-19. While McLeod correctly observes that the BPA provides that McLeod "shall be required" to "attend a post-award kickoff meeting" and to complete monthly status reports on open task orders, there are no other duties or obligations imposed upon either party in the BPA. *Id.* at 13-14.

Indeed, the plain language of the BPA makes clear that this agreement is "a simplified method of filling repetitive needs for supplies or services by establishing 'charge accounts' with qualified sources of supply." *Zhengxing*, 71 Fed. Cl. at 738 (quoting 48 C.F.R. § 13.303-1(a)); *see also Crewzers*, 741 F.3d at 1382-83. Because such an agreement is not a contract with the government, McLeod cannot rely upon the BPA to establish jurisdiction in this case.

McLeod's argument that the jurisdictional dismissal of its claims related to the BPA would be improper is also misguided. Pl. Resp. at 7-11. It is well-established that McLeod bears the burden of establishing subject-matter jurisdiction with respect to its breach of contract claims. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should McLeod fail to do so, the Court must dismiss these claims. *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In its response and opposition to the government's partial motion to dismiss, McLeod argues that it "strongly disagrees with the interpretation of the agreement advanced by [the government] and can demonstrate that, when properly read, the agreement is a contract between McLeod and the Government." Pl. Resp. at 11. But, McLeod does not put forward a persuasive

argument that the BPA at issue here materially differs from the blanket purchase agreements that this Court and the Federal Circuit have held not to be a contract. *See generally id.*

McLeod argues that there is mutuality of consideration between the parties in this case, because the BPA "placed multiple performance obligations on McLeod with regard to the BPA that were independent of its obligations under the Task Orders." *Id.* at 16. But, as discussed above, the BPA only requires that McLeod "attend a post-award kickoff meeting" and complete monthly status reports on any open task orders. McLeod identifies no other "performance obligations" imposed by the BPA in its response.[5] Def. App'x at 13-14; *see generally* Pl. Resp.

McLeod's contention that the "issuance and performance of seven Task Orders is particularly compelling evidence of [the existence] a contract" is also not persuasive. Pl. Resp. at 13. There is no dispute in this case that the task orders issued pursuant to the BPA are contractual agreements with the government. Def. Mot. at 3 ("DHS issued seven task orders to McLeod under the BPA . . . ."); Pl. Resp. at 12 ("DHS issued seven Task Orders under the [BPA] . . . ."). But, McLeod has simply not met its burden to establish that the BPA itself is a contract. Given this, the Court cannot consider McLeod's breach of contract claims related to the BPA.[6]

## V. CONCLUSION

In sum, McLeod has not shown that the Court possesses subject-matter jurisdiction to consider Counts I, II and V of the complaint. And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's partial motion to dismiss; and

2. **DISMISSES** Counts I, II and V of the complaint.

---

[5] McLeod's argument that this Court may consider Counts I, II and V of the complaint under the Federal Circuit's holding in *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346 (Fed. Cir. 2011), is also misplaced. Pl. Resp. at 7-11. In that case, the Federal Circuit held that "plaintiff need only allege the existence of a contract . . . 'relative to' an express or implied contract with an executive agency to establish subject-matter jurisdiction." *Engage Learning*, 660 F.3d at 1353. But, the Federal Circuit has also specifically held in *Crewzers Fire Crew Transport, Inc. v. United States*, that a blanket purchase agreement is not a contract for purposes of establishing jurisdiction under the Tucker Act. *Crewzers*, 741 F.3d at 1384-85.

[6] Because the Court determines that the BPA at issue in this case is not a contract—and, as a result, the Court does not possess subject-matter jurisdiction to consider McLeod's CDA claims related to that agreement—the Court does not reach the other issues raised in the government's partial motion to dismiss.

Case 1:18-cv-00628-LKG   Document 15   Filed 04/04/19   Page 11 of 11

The government shall **FILE** an answer or response to the remaining counts of the complaint on or before **May 20, 2019**.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge